UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MAUREEN HERGENREDER,

        Plaintiff,

                                        Case Number 09-13347-BC
v.                                      Honorable Thomas L. Ludington

BICKFORD SENIOR LIVING GROUP LLC,

        Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION, DENYING PLAINTIFF'S MOTION FOR SANCTIONS, DISMISSING COMPLAINT WITHOUT PREJUDICE, AND CANCELING HEARING

On August 25, 2009, Plaintiff Maureen Hergenreder filed a complaint for employment discrimination under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq., and possibly Michigan law. Now before the Court is Defendant Bickford Senior Living Group LLC's motion to stay proceedings and compel arbitration [Dkt. # 13], filed on February 9, 2010. Plaintiff filed a response [Dkt. # 15] on February 15, 2010; and Defendant filed a reply [Dkt. # 17] on February 22, 2010. The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. E.D. Mich. LR 7.1(e)(2). For the reasons stated below, Defendant's motion to compel arbitration will be granted, but the request for a stay will be denied.

I

Defendant hired Plaintiff on or about October 30, 2006, as a registered nurse coordinator.

Compl. ¶ 12. On December 12, 2006, Plaintiff was admitted to the hospital to have her thyroid removed. *Id.* ¶ 19. Plaintiff was authorized by her physician to return to work on December 28, 2006. *Id.* ¶ 22. Plaintiff's supervisor advised Plaintiff not to return to work and was very concerned about Plaintiff's health condition. *Id.* ¶ 23-25. Plaintiff was informed on January 12, 2007, that her employment was terminated. *Id.* ¶ 27. A letter dated January 25, 2007, advised Plaintiff that her employment was terminated due to her surgery and time necessary for recuperation. *Id.* ¶ 30.

Defendant advances the following facts in its pending motion: Effective June 1, 2004, Defendant enacted a dispute resolution program ("DRP") to resolve the workplace disputes of all new and continuing employees. *See* Def. Br. Ex. 1 (summary of DRP). Generally, the DRP is an integrated, four-step dispute resolution process including an "open door" process, non-binding internal mediation, non-binding external mediation, and binding arbitration. *Id.* 1-2. By its terms, the DRP requires all employees hired after June 1, 2004, "as a condition of employment," to use the DRP to resolve workplaces disputes, including by submitting "covered claims" to final, binding, and exclusive arbitration. *Id.* 2. A "covered claim" is an "employment-related claim" of either an employee or Defendant "regarding termination and/or alleged unlawful or illegal conduct" and includes "discrimination and harassment claims." *Id.* 5.

Plaintiff did not sign an agreement to arbitrate. Instead, Defendant advances Plaintiff's signed acknowledgment of receipt of the employee handbook, which refers to the DRP. *See* Def. Br. Ex. 3 (acknowledgment); Pl. Br. Ex. 11 (employee handbook, p. 19). The acknowledgment provides that the signatory has "read . . . carefully" the employee handbook, "understand[s] the policies and procedures contained therein," "agree[s] to abide by each in its entirety," and will "direct any questions regarding its contents to my immediate supervisor and/or the Vice President

of Human Resources." *Id.* The acknowledgment further provides that the employee handbook is "for information purposes only," "may be changed or eliminated," and "does not constitute any contractual obligation on my part nor on the part of [Defendant]." *Id.* Despite signing the acknowledgment, Plaintiff states that she was never aware or informed of an obligation to arbitrate any employment disputes. Pl. Br. Ex. 7 (Pl. Aff. ¶ 21-24, Jan. 7, 2010).

II

The Federal Arbitration Act ("FAA") requires a federal court to stay an action when an issue in the proceeding is referable to arbitration, *see* 9 U.S.C. § 3, and to compel arbitration when one party fails or refuses to comply with the provisions of an enforceable arbitration agreement. *See* 9 U.S.C. § 4; *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003) (observing that "any doubts regarding arbitrability must be resolved in favor of arbitration"). The United States Supreme Court has found that these provisions "manifest a 'liberal federal policy favoring arbitration agreements.' " *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002); *see also Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (noting that there is "a well-established rule that any doubts regarding arbitrability should be resolved in favor of arbitration").

Nonetheless, "[b]efore compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). "Because arbitration agreements are fundamentally contracts, [federal courts] review the enforceability of an arbitration agreement according to the applicable state law of contract

-3-

formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir.2007). State contract law governs "provided the contract law applied is general and not specific to arbitration clauses." *Fazio*, 340 F.3d at 393. This is because the FAA preempts "state laws applicable *only* to arbitration provisions." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (emphasis in original) (explaining that "Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed upon the same footing as other contracts").

Under Michigan law, the elements of a valid contract are (1) parties competent to enter into a contract, (2) a proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Thomas v. Leja*, 468 N.W.2d 58, 60 (Mich. Ct. App. 1991). "In order to form a valid contract, there must be a meeting of the minds on all the material facts." *Kamalnath v. Mercy Memorial Hosp. Corp.*, 487 N.W.2d 499, 503 (Mich. Ct. App. 1992). " 'Meeting of the minds' is a figure of speech for mutual assent." *Id.* at 503. "A contract is made when both parties have executed or accepted it, and not before." *Id.* The party seeking to enforce the contract has the burden to show the existence of the contract. *Id.* Notably, the absence of a signature is not necessarily fatal to a finding of an agreement. Michigan law permits an inference that an offeree accepted the terms of the agreement when assent is signaled through conduct. *Pakideh v. Franklin Commercial Mortgage Group, Inc.*, 540 N.W.2d 777, 780 (Mich. Ct. App. 1995) ("If an offer does not require a specific form of acceptance, acceptance may be implied by the offeree's conduct.") (internal citation omitted). *See also Seawright*, 507 F.3d at 978 (finding that "arbitration agreements under the FAA need to be *written*, but not necessarily signed") (emphasis in original).

Plaintiff contends that there is no agreement to arbitrate in this case because Plaintiff never

signed an arbitration agreement, nor was she ever informed or aware of an obligation to arbitrate employment disputes. Plaintiff emphasizes that the only connection to an arbitration agreement is the employee handbook, which expressly states that it is not a binding contract. Plaintiff also emphasizes that she filled out several other forms along with her employment application, but none of them referred to an arbitration obligation. Plaintiff relies on *High v. Capital Senior Living Properties 2-Heatherwood, Inc.*, 594 F. Supp. 2d 789 (E.D. Mich. 2008), to support the proposition that an agreement to arbitrate is not formed under these circumstances. Plaintiff relies on the same case to support the proposition that she cannot be compelled to arbitrate her claims because she did not expressly waive her right to a jury trial.

Defendant contends that a contract was formed because under Michigan law, Plaintiff was "reasonably notified" of the arbitration policy. In *Guelff v. Mercy Health Servs.*, the Michigan Court of Appeals reasoned that an arbitration provision within an employee manual was enforceable "even though plaintiff claimed that she did not have actual knowledge of the manual [because] the distribution of the manual provided plaintiff with reasonable notification of the employment guidelines." No. 200040, 1999 WL 33444156, at *2 (Mich. Ct. App. May 25, 1999) (per curiam). Plaintiff has advanced no legal authority to the contrary.

Defendant also contends that the language disclaiming contract formation in the employee handbook is not relevant because the DRP and agreement to arbitrate are stand-alone documents. *See Kettles v. Rent-way, Inc.*, No. 1:09-cv-230, 2009 WL 1406670, at *1, 5-10 (W.D. Mich. May 18, 2009) (finding that an agreement to arbitrate was formed even though the employee had not signed the arbitration agreement and the employee handbook was not itself a binding contract when the employee signed an acknowledgment that it was his responsibility to remain current with

policies and procedures). Again, Plaintiff has advanced no legal authority to the contrary.

Defendant also emphasizes that in *High*, relied on by Plaintiff, the court recognized that when claims "are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes." 594 F. Supp. 2d at 800 (quoting *Cooper v. MRM Investment Co.*, 367 F.3d 493, 507 (6th Cir. 2004)). The court in *High* only evaluated whether the jury trial waiver was "knowing and voluntary" because the unsigned agreement to arbitrate contained a "clear express waiver of the right to a jury trial." *Id. See also Cooper*, 367 F.3d at 507-08 (resolving an apparent conflict between *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483 (6th Cir. 2001) and *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752 (6th Cir. 1995)). Unlike in *High*, here, the arbitration agreement does not contain an express waiver of the right to a jury trial. Thus, the jury trial right simply "vanishes." *Cooper*, 367 F.3d at 507.

Based on the above, Defendant has demonstrated that a valid agreement to arbitrate Plaintiff's claims exists because Plaintiff was reasonably notified of the DRP and elected to accept and continue her employment. Thus, Defendant's motion to compel arbitration will be granted. Nonetheless, Defendant's request for a stay of proceedings will be denied because it is all, and not only some, of Plaintiff's claims, that require arbitration. *See Arnold v. Arnold* Corp., 920 F.2d 1269, 1275-76 (6th Cir. 1990); *Hensel v. Cargill, Inc.*, 975 F.2d 245 (table), 1999 WL 993775, at *4 (6th Cir. 1999) (per curiam) ("[L]itigation in which all claims are referred to arbitration may be dismissed.").

III

Plaintiff's motion for sanctions [Dkt. # 16] seeks sanctions against Defendant pursuant to Federal Rule of Civil Procedure 11 based on assertions that Defendant's motion to stay proceedings

or compel arbitration is frivolous. The preceding analysis indicates that Defendant's motion is not frivolous and Plaintiff's motion for sanctions will be denied.

Accordingly, it is **ORDERED** that Defendant's motion to stay proceeding and compel arbitration [Dkt. # 13] is **GRANTED IN PART** and **DENIED IN PART**.

It is further **ORDERED** that Plaintiff's motion for sanctions [Dkt. # 16] is **DENIED**.

It is further **ORDERED** that the complaint [Dkt. # 1] is **DISMISSED WITHOUT PREJUDICE**.

It is further **ORDERED** that the hearing scheduled for March 24, 2010, is **CANCELED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: March 16, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 16, 2010.

s/Tracy A. Jacobs
TRACY A. JACOBS